UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

===

BERNICE MONTAGUE,

                    Plaintiff,

          v.                                             **DECISION AND ORDER**

                                                        17-CV-3S

NATIONAL GRID USA,

                    Defendant.

===

## I.     Introduction

This is an Americans With Disabilities Act, 42 U.S.C. §§ 12101, <u>et seq.</u> ("ADA"), case, where Plaintiff alleges her employer failed to furnish her with reasonable accommodation for her condition.  She sought assignment with a non-smoking partner so as to avoid eye irritation.  Instead, after months of such assignments upon her request, Defendant National Grid USA reassigned Plaintiff to a desk job and then offered her reassignment to a remote location to avoid eye irritation from her exposure to tobacco smoke.  She also alleges violations of ADA in Defendant retaliating when she complained (Docket No. 1, Compl.).

Before this Court are (1) Defendant National Grid's Motion[1] (Docket No. 31) and (2) Plaintiff's cross Motion[2] (Docket No. 34) for Summary Judgment.

For the reasons stated herein, Defendant's Motion for Summary Judgment (Docket No. 31) is **granted** and Plaintiff's Summary Judgment Motion (Docket No. 34) is **denied**.

## II.    Background

### A.  Facts

Although both parties present their own Statements of Material Facts in support of their respective motions (Docket Nos. 32, Def. Statement; 35, Pl. Statement), the material facts here generally are not in dispute (see generally Docket No. 52, Pl. Statement of Disputed Facts/Pl.'s Response to Def.'s Statement (hereinafter "Pl. Responding Statement").   Although Defendant argued Plaintiff's Statement misrepresented relevant evidence, failed to acknowledge certain material facts and evidence, and incorrectly asserted that certain facts are "material" to the outcome of this action, Defendant acknowledges an absence of genuine issue of material fact (Docket No. 53, Def. Response to Pl.'s Statement at 1 (hereinafter "Def. Response Statement")).   For convenience, this Court will cite Defendant's Statement (Docket No. 32) and Plaintiff's

---

[1]In support of its motion, Defendant submitted its Statement of Facts, Docket No. 32; defense attorney's affirmation, Docket No. 33; the declarations of Thomas Cammuso, Docket No. 39, and Andrea Pustulka, Docket No. 40; the Affidavit of Dr. Ivan Wolf, Docket No. 41; Defendant's Memorandum of Law, Docket No. 42; and its Reply Memorandum, Docket No. 57 and supporting papers.

In response to Defendant's Motion, Plaintiff also submitted her Memorandum in Opposition, Docket No. 51, and a Reply to Defendant's Statement of Facts, Docket No. 52, as well as her motion for summary judgment, Docket No. 34.

[2]In support of her motion, Plaintiff initially submitted her Statement of Facts, Docket No. 35; her Declaration with exhibits, Docket No. 36; the Declaration of Dr. Nicholas Stathopoulos, Docket No. 37; and her attorney's Declaration with exhibits, Docket No. 38; and her Reply Memorandum, Docket No. 58.

In response to Plaintiff's Motion, Defendant also submits its response to Plaintiff's Statement of Facts, Docket No. 53; its opposing Memorandum, Docket No. 54; its attorney's Affirmation, Docket No. 55; the Declaration of Mark Davis, Docket No. 56, as well as its own motion, Docket No. 31 and supporting papers.

Statement (Docket No. 35) where not repetitive of Defendant's Statement and uncontested, while noting (when relevant) the opponent's differences.

### 1. Plaintiff's Diagnosis

This ADA action arises from Defendant's consideration of Plaintiff's chronic corneal condition and its purported effect on her ability to work.  First diagnosed in 2002 or 2003, Plaintiff was diagnosed with Fuchs' corneal dystrophy and keratoconus, which she claims precludes her from work that exposes her eyes to tobacco smoke (Docket No. 32, Def. Statement ¶ 12).

Corneal Dystrophy results in the pointing of the cornea, while keratoconus (defined as conical protrusion of the center of the cornea without inflammation, Taber's Cyclopedic Medical Dictionary 969 (16th Ill. Ed. 1989)), causes the cornea to deteriorate (id. ¶ 14). See also Jackson v. New York State Dep't of Labor, No. 97CV483, 1998 U.S. Dist. LEXIS 17202 (N.D.N.Y. Oct. 26, 1998), describing symptoms.  Plaintiff adds that she was also diagnosed with keratitis (Docket No. 52, Pl. Responding Statement ¶ 12), the inflammation of the cornea, Taber's Cyclopedic Medical Dictionary, supra, at 968. Exposure to smoke causes irritation to her eyes (Docket No. 32, Def. Statement ¶¶ 23-24).

Despite these impairments, Defendant contends that Plaintiff could work and drive her personal vehicle (id. ¶ 17), but Plaintiff disputes this given her symptoms (Docket No. 52, Pl. Responding Statement ¶ 17).

### 2. Plaintiff's Job and Her Accommodation Request, 2015

Plaintiff worked for Defendant in its Buffalo, New York, office in the Customer Metering Service ("CMS") department as a Service Representative A (or "SR-A") (Docket

No. 1, Compl. ¶ 12; Docket No. 32, Def. Statement ¶¶ 2-5).  There, Plaintiff would read meters, usually driving in a two-person crew to check them (Docket No. 35, Pl. Statement ¶ 3; cf. Docket No. 53, Def. Response ¶ 3).  This job requires driving and riding in proximity with a colleague inside and outside of Defendant's company vehicles (Docket No. 35, Pl. Statement ¶ 4).  Plaintiff adds that the crew was given discretion to pick the driver, hence safe operation of the company's vehicles was not a job requirement (id. ¶¶ 4, 5).

Plaintiff's ophthalmologist, Dr. Nicholas Stathopoulos, issued a prescription to Defendant on or about May 12, 2015 (Docket No. 32, Def. Statement ¶ 18; Docket No. 35, Pl. Statement ¶ 13; Docket No. 33, Def. Atty. Affirm. Ex. H; Docket No. 37, Dr. Stathopoulos ¶ 10, Ex. A).  There, Dr. Stathopoulos stated "Bernice has chronic inflammation of both eyes with intermittent blurring.  Please put her in a [2-person] crew with non-smoker as fumes aggravate her symptoms" (Docket No. 33, Ex. H).

Plaintiff submitted this note and her medical record to Defendant's medical staff to support her request for driving restrictions of placement in a two-person car without a smoker (Docket No. 32, Def. Statement ¶ 18).  Defendant temporarily accommodated Plaintiff's specific request (id. ¶ 19), either assigning Plaintiff to a solo vehicle or pairing her with non-smokers until August 24, 2015, consistent with her doctor's prescription (Docket No. 35, Pl. Statement ¶¶ 34-35; see Docket No. 53, Def. Response Statement ¶¶ 34-35 (admitting Plaintiff's allegations)).

One of Plaintiff's supervisors, Mark Davis, later questioned the duration of this accommodation (Docket No. 32, Def. Statement ¶ 20).  Plaintiff points out that Davis thought that she was "abusing the situation by trying to pick and choose who she rides with and not being a driver" (Docket No. 52, Pl. Responding Statement ¶ 20).

According to Plaintiff's moving papers, from Davis' inquiry Defendant's staff exchanged emails inquiring about the duration and necessity of Plaintiff's restrictions (Docket No. 35, Pl. Statement ¶¶ 21, 22).  In response to Plaintiff's motion, Defendant admits these factual allegations and adds the texts of these emails (Docket No. 53, Def. Response Statement ¶¶ 21-22; Docket No. 38, Pl. Atty. Decl., Ex. H).  Kathleen Kerr, registered physician assistant-certified with Defendant (Docket No. 35, Pl. Statement ¶ 17 & n.1), also noted in this email exchange that Defendant's company policy did not allow smoking in company vehicles, so Plaintiff probably was exposed to the smell of smoke on someone's clothes or in homes of smoking customers (Docket No. 38, Pl. Atty. Decl., Ex. H; Docket No. 53, Def. Statement ¶ 22).

On July 24, 2015, Ms. Kerr asked Dr. Stathopoulos whether there was a medical reason prohibiting Plaintiff from driving company vehicles although she drove her own vehicle.  She also asked if Plaintiff was able to ride in a vehicle with a smoker "who does not actively smoke inside the vehicle?" (Docket No. 32, Def. Statement ¶¶ 21-22; Docket No. 33, Exs. I, J).

Dr. Stathopoulos answered (which Defendant received on August 4, 2015, Docket No. 32, Def. Statement ¶ 23) that there was a medical reason for prohibiting Plaintiff from driving company vehicles although she could drive her own, that "if her eyes start to tear or dry out she can stop driving her personal vehicle or not go out at all.  This would be a problem if she were working and driving one of your vehicles" (Docket No. 33, Ex. J; Docket No. 37, Dr. Stathopoulos ¶ 13, Ex. B).

Dr. Stathopoulos answered the second question that Plaintiff could not ride in a vehicle with a smoker even if that person was not actively smoking because "her eyes

respond [over-aggressively] to fumes & chemicals.  The fumes from smoking remain in a person's clothes in a small vehicle and exacerbate her problems" (Docket No. 33, Ex. J; Docket No. 37, Dr. Stathopoulos ¶ 13, Ex. B).  Dr. Stathopoulos' response listed Plaintiff's three ailments (Docket No. 37, Stathopoulos Decl. Ex. B).

In response to that note, Defendant considered reassigning Plaintiff to alternative internal position that did not require driving a company vehicle and claimed it began an interactive process with Plaintiff to devise a permanent accommodation (Docket No. 32, Def. Statement ¶ 26; see Docket No. 52, Pl. Response ¶ 26; Docket No. 35, Pl. Statement ¶ 36; Docket No. 53, Def. Response Statement ¶ 36 (Plaintiff removed from field on August 24, 2015, based upon then-current understanding of her condition); but cf. Docket No. 52, Pl. Response ¶ 26 (disputing Defendant Statement ¶ 26 and denying an interactive process occurred)).  CMS department manager Andrea Pustulka did this because she could not guarantee that Plaintiff would not be exposed to smoke in the field (Docket No. 32, Def. Statement ¶ 9; Docket No. 53, Def. Response Statement ¶¶ 36, 37).  Later Ms. Pustulka reported that she could not guarantee that Plaintiff could be paired with a non-smoker or that she would not enter a customer's property with a chain smoker or fumes present (Docket No. 35, Pl. Statement ¶ 40; see Docket No. 53, Def. Response Statement ¶ 40; Docket No. 36, Pl. Atty. Decl. Ex. U).  Defendant's staff then considered other options to accommodate Plaintiff's condition (such as issuing her goggles or assignment to a non-driving position) (Docket No. 32, Def. Statement ¶ 28) without consulting Plaintiff about these options.

On August 24, 2015, Defendant reassigned Plaintiff to the office (see Docket No. 32, Def. Statement ¶ 26).  Plaintiff counters that there was no interactive process prior

to this reassignment, with the interactive process later conducted on November 2, 2015 (Docket No. 52, Pl. Responding Statement ¶ 26).   Defendant contends that Plaintiff continued to receive her full salary and benefits (Docket No. 32, Def. Statement ¶ 27), while Plaintiff argues that she lacked opportunities with this new assignment for overtime that she had as an SR-A (Docket No. 52, Pl. Responding Statement ¶ 27).  Plaintiff further objects that her material responsibilities in her job were diminished while she performed mere "'busy work' for several months" in the office (Docket No. 51, Pl. Memo. at 3).  She also contends she was not told why she was placed on office duty and removed her from SR-A, leading to speculation by her colleagues (id.).

Defendant then retained medical consultant Dr. Ivan Wolf to assess whether Plaintiff could drive a company vehicle safely (Docket No. 32, Def. Statement ¶ 29; Docket No. 35, Pl. Statement ¶ 47; Docket No. 38, Pl. Atty. Decl. Ex. CC).   On or about October 20, 2015, Dr. Wolf reviewed Plaintiff's medical record and other materials and opined (given the condition of her eyes) that it was unsafe for Plaintiff to drive a company vehicle (Docket No. 38, Pl. Atty. Decl. Ex. CC; Docket No. 32, Def. Statement ¶¶ 30, 31).

On November 2, 2015, Defendant engaged with Plaintiff in an interactive process to find a permanent accommodation (Docket No. 32, Def. Statement ¶¶ 32, 33; see Docket No. 52, Pl. Response ¶ 26).   Defendant offered a series of possible accommodations:  temporary assignment in CMS Department (office work); fill a vacancy; allow Plaintiff to bid on all available positions; place Plaintiff on short-term disability on full pay; if no other options were available, make Plaintiff eligible for placement on long-term disability (Docket No. 32, Def. Statement ¶ 34).   Plaintiff disputes whether these accommodations were "discussed" (Docket No. 52, Pl. Responding Statement ¶ 37) or

7

whether Defendant considered the option (suggested by Dr. Wolf) of Plaintiff as a rider in company cars (id. ¶ 32).

On November 4, 2015, Plaintiff sent another note from Dr. Stathopoulos (Docket No. 35, Pl. Statement ¶ 65).  Dated November 3, 2015, Dr. Stathopoulos replied to Kerr that "there is no medical reason that prohibits Bernice Montague from operating a company vehicle or riding with a non-smoker" (Docket No. 33, Ex. K; Docket No. 37, Stathopoulos Decl. ¶ 23, Ex. C; Docket No. 32, Def. Statement ¶ 35; Docket No. 35, Pl. Statement ¶ 65).

On November 5, 2015, Plaintiff filed an ethics complaint with Defendant's ethics hotline alleging disability discrimination in the terms of the proposed accommodation. Plaintiff requested that she return to her Service Representation-A position as the appropriate accommodation. (Docket No. 32, Def. Statement ¶¶ 36, 37.)  Plaintiff called the ethics hotline because she believed Defendant was discriminating against her because of her disability (Docket No. 35, Pl. Statement ¶ 63).  Defendant's management who was negotiating Plaintiff's accommodation was unaware of her pending ethics complaint on November 12, 2015 (Docket No. 32, Def. Statement ¶ 39).   Defendant contends that her grievance was investigated and found to be unsubstantiated (Docket No. 53, Def. Response Statement ¶ 64; Docket No. 32, Def. Statement ¶ 38).

The parties met again on November 12, 2015 and Defendant offered Plaintiff a position as an office technician in the Fredonia/Dunkirk, New York, area (Docket No. 32, Def. Statement ¶¶ 40-41).  Plaintiff claims that Ms. Pustulka pulled Plaintiff from the field and assigned her office duty in Fredonia to avoid Plaintiff's exposure to smoke or fumes in customers' premises (Docket No. 35, Pl. Statement ¶ 68; Docket No. 51, Pl. Memo. at

7).  She also complains of the hour-long commute to and from Fredonia (Docket No. 51, Pl. Memo. at 8-9), while noting that there was an open clerk position in the Buffalo office that she was qualified for (Docket No. 35, Pl. Statement ¶ 69; Docket No. 51, Pl. Memo. at 8-9).  Defendant contends, however, that Plaintiff was never assigned the Fredonia position (Docket No. 32, Def. Statement ¶ 42); Plaintiff does not dispute Defendant's Statement on this point (Docket No. 52, Pl. Responding Statement ¶ 42).

On November 13, 2015, at the continued interactive process meeting, Plaintiff submitted another note from Dr. Stathopoulos (Docket No. 32, Def. Statement ¶ 43; Docket No. 35, Pl. Statement ¶ 72; Docket No. 33, Ex. L; Docket No. 37, Stathopoulos Decl. ¶ 26, Ex. D), declaring that "after examination today Bernice is able to return to work with no restriction for her work duties including driving" (Docket No. 33, Ex. L, Docket No. 37, Ex. D).

Defendant contends that, although there was no change in Plaintiff's condition, the new note was inconsistent with the prior notes from Dr. Stathopoulos and with Dr. Wolf's assessment (Docket No. 32, Def. Statement ¶¶ 45, 44).  Plaintiff disagrees, arguing that Dr. Stathopoulos' latter note did not conflict with his previous findings because Dr. Stathopoulos never called for Plaintiff not to drive a company vehicle.  The doctor consistently stated that Plaintiff could only be in a vehicle with a non-smoker.  (Docket No. 52, Pl. Responding Statement ¶ 44; see Docket No. 35, Pl. Statement ¶ 66.)

Defendant then scheduled an independent ophthalmological examination of Plaintiff (Docket No. 32, Def. Statement ¶¶ 46-47).  Meanwhile, Plaintiff remained working in the alternative work assignment in the office at the CMS department (id. ¶ 48).  Plaintiff,

however, contends that she continued to lose overtime opportunities while in the office (Docket No. 52, Pl. Responding Statement ¶ 48).

Defendant also argues that Plaintiff terminated the interactive process on November 13 when she submitted Dr. Stathopoulos's last note (Docket No. 42, Def. Memo. at 20).  Plaintiff denies that she abandoned or ended this process (Docket No. 51, Pl. Memo. at 28-29).

On December 11, 2015, Defendant then had Plaintiff examined by an independent medical examiner, Dr. James Twist of First Choice Evaluators (Docket No. 35, Pl. Statement ¶¶ 75-76).  On December 22, 2015, Dr. Twist stated the reason he examined Plaintiff was to determine her ability to operate a work vehicle safely with regard to her eye conditions and symptoms.  Dr. Twist noted that Plaintiff believed she was there for a "fit for duty evaluation."  Plaintiff had mentioned to Dr. Twist that "smoke bothered her eyes."  Dr. Twist assessed Plaintiff and found that her "Keratoconus, stable; Fuchs' endothelial corneal dystrophy, stable; and dry eye syndrome, stable."  Dr. Twist opined that "although she does have some important eye conditions, at the present time her visual acuity is stable, and she is fully capable of performing her job, requiring operating a work vehicle without any restrictions."  (Docket No. 33, Ex. M, at 2.)

On January 4, 2016, Dr. Wolf emailed Defendant that (based upon Dr. Twist's IME report) he recommended allowing Plaintiff to return to driving company vehicles (Docket No. 35, Pl. Statement ¶ 78; Docket No. 38, Pl. Atty. Decl. Ex. DD; see Docket No. 32, Def. Statement ¶ 50).

Defendant accepted Dr. Wolf's evaluation, and, on an unspecified date in January 2016, Defendant returned Plaintiff to work as an SR-A (Docket No. 32, Def.

Statement ¶ 50; Docket No. 39, Thomas Cammuso Decl. ¶ 27; Docket No. 35, Pl. Statement ¶ 81; Docket No. 36, Pl. Decl. ¶ 59).   Plaintiff served as a SR-A until October 2017 (Docket No. 32, Def. Statement ¶ 51), apparently without further incident. In October 2017, Defendant appointed Plaintiff to become a Consumer Representative-A (or "CR-A"), at a higher pay rate (id. ¶¶ 51-52).

Throughout this, Plaintiff argues that Defendant's staff failed to understand the nature of her ailments, that she was affected by exposure to smoke in a vehicle or from a coworker's clothing (Docket No. 35, Pl. Statement ¶¶ 111-19).   Defendant's manager of health and well-being, Theresa Overdyke (id. ¶ 21), said that she understood that cigarette smoke caused Plaintiff's eyes to water (Docket No. 53, Def. Response ¶¶ 116, 117).   Plaintiff denied that exposure to smoke in customers' homes was a problem (Docket No. 35, Pl. Statement ¶¶ 120-22, 125).   Defendant nevertheless defined her condition relative to her ability to drive (especially company vehicles).

### B. Procedural History

Plaintiff filed her Complaint on January 3, 2017 (Docket No. 1).   In her First Cause of Action, Plaintiff alleges Defendant failed to accommodate her claimed disability (id. ¶¶ 44-54).   In the Second Cause of Action, Plaintiff claims Defendant discriminated against her for her perceived disability by how they treated her due to her medical condition (id. ¶¶ 56-64).   Finally, the Third Cause of Action alleges Defendant retaliated against Plaintiff by reassigning her out of Buffalo and into a department with fewer opportunities for overtime (id. ¶¶ 66-77).

Defendant answered (Docket No. 5).   After referral to Magistrate Judge Michael Roemer (Docket No. 8), issuance of Scheduling Orders (Docket Nos. 13, 18, 21, 25; see

Docket No. 29 (in minute entry setting dispositive motion deadline)), and discovery, the parties filed their respective Motions for Summary Judgment (Docket Nos. 31, 34).

Responses to the motions were on October 5, 2018 (Docket No. 44). The parties jointly moved to extend this deadline (Docket Nos. 45, 47), the latter motion was granted; responses then were due by October 17, 2018, and replies by October 31, 2018 (Docket No. 50). After timely submission of responding and reply papers, the motions then were deemed submitted without oral argument.

### III.    Discussion

A.  Applicable Standards

1.  Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit under governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine" dispute, in turn, exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party," id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion," Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (internal quotations and citations omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper," Bryant v. Maffucci, 923 F.32d 979, 982 (2d Cir. 1991)

(citation omitted).  Indeed "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper," Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82, 83 (2d Cir. 2004) (citation omitted).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial," Anderson, supra, 477 U.S. at 249.

"When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009), citing, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  "Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact," Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted) (quoting Celotex, supra, 477 U.S. at 323).  The party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original removed).

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a).  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the nonmovant.  Ford, supra, 316 F.3d at 354.

This Court is not confined "to the particular propositions of law advanced by the parties on summary-judgment motion," 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2725.3, at 447 (Civil ed. 2010).

### 2.  ADA Claims

#### a.  Failure to Accommodate Claim

##### 1)  Elements of ADA Disability Claim

This Court in Granica v. Town of Hamburg, 237 F. Supp. 2d 60, 77-78 (W.D.N.Y. 2017) (Skretny, J.), reiterated the elements for an ADA disability claim:

> The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); Capobianco v. City of N.Y., 422 F.3d 47, 56 (2d Cir. 2005).  One such form of discrimination is "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  42 U.S.C. § 12112 (b)(5)(A).  A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  ADA claims are subject to the McDonnell Douglas burden-shifting analysis and the plaintiff need not show an adverse employment action to state a failure-to-accommodate claim.  See McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 96 (2d Cir. 2009).
>
> To make out a prima facie case of disability discrimination arising from a failure to accommodate, a plaintiff must establish each of the following elements:  "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of

his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006) (quoting Rodal v. Anesthesia Grp. of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004) (internal quotation marks omitted)).

A reasonable accommodation is one that "enables[s] an individual with a disability who is qualified to perform the essential functions of that position . . . [or] to enjoy equal benefits and privileges of employment." 29 C.F.R. § 1630.2(o)(1)(ii)–(iii).  Reasonable accommodations may include, inter alia, "modification of job duties and schedules, alteration of the facilities in which a job is performed, acquisition of devices to assist the performance of job duties, and, under certain circumstances, 'reassignment to a vacant position.'" McBride, 583 F.3d at 97 (quoting 42 U.S.C. § 12111 (9)(B)).

The plaintiff "bears the burdens of both production and persuasion as to the existence of some accommodation that would allow him to perform the essential functions of his employment." McMillan v. City of New York, 711 F.3d 120, 126 (2d Cir. 2013) (internal quotation marks, citations, and alterations omitted). The defendant then bears the burden of persuasion that the accommodation "would present undue hardships and would therefore be unreasonable." Id. at 128.  An "undue hardship" is "an action requiring significant difficulty or expense."  42 U.S.C. § 12111 (10)(A).

"Disability" under the ADA is defined as:

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment.

42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2 (Docket No. 54, Def. Reply Memo. at 3).  The inability to perform a particular job "does not constitute a substantial limitation in the major life activity of working," 29 C.F.R. § 1630.2(j)(3); Weigand v. Niagara Frontier Transp. Auth., No. 03CV794, 2010 WL 584021, at *8 (W.D.N.Y. Feb. 16, 2010) (Skretny, C.J.).

An employer also need not accept an employee's proposed accommodation, but it must furnish a reasonable accommodation, McElwee v. County of Orange, 700 F.3d 635, 641 (2d Cir. 2012).

2) Temporary Impairment and the ADA

A temporary impairment may not be deemed a disability under the ADA, see Fajardo-Espinosa v. Parkland Hosp., No. 3:09-CV-540-O ECF, 2010 WL 1267260, at *3 (N.D. Tex. Mar. 16, 2010) (Stickney, Mag. J.); see Hamilton v. Southwestern Bell Tel. Co., 136 F.3d 1047, 1050-51 (5th Cir. 1998) (plaintiff admitting that impairment no longer existed).  In two summary Orders, the Second Circuit reaffirmed that certain temporary impairments fail to be substantially limiting to be considered disabilities under the ADA, Francis v. Hartford Bd. of Educ., 760 F. App'x 34, 36-37, 36 n.1 (2d Cir. 2019); De La Rosa v. Potter, 427 F. App'x 28, 29 (2d Cir. 2011).  District Courts in this Circuit (including this Court) have held that an impairment that was too brief to impact a major life activity is not disabling, Van Ever-Ford v. State of N.Y., Office of Mental Health, No. 13CV412, 2020 WL 5951334, at *10-11 (W.D.N.Y. Oct. 8, 2020) (Vilardo, J.) (various ailments of short duration held not to be disability under the ADA); Kruger v. Hamilton Manor Nursing Home, 10 F. Supp. 3d 385, 389 (W.D.N.Y. 2014) (Wolford, J.) (broken arm held not a disability under the ADA); Wanamaker v. Westport Bd. of Educ., 899 F. Supp. 2d 193, 211 (D. Conn. 2012).

Under the 2008 ADA Amendment Act, Pub. L. 110–325, 122 Stat. 3553 (2008), the intent of Congress was to make it easier for claimants to obtain protection under the ADA, 29 C.F.R. § 1630.1(c)(4).  Hence, the Equal Employment Opportunity Commission ("EEOC") now interprets "substantially limits" broader than it had under the pre-amendment ADA, with "'substantially limits' is not meant to be a demanding standard," 29 C.F.R. § 1630.2(j)(1)(i).  For an episodic impairment, it is deemed disabling "'if it would substantially limit a major life activity when active,'" Robles v. Medisys Health Network,

Inc., No. 19-cv-6651, 2020 WL 3403191, at * 8 (E.D.N.Y. June 19, 2020) (quoting 29 C.F.R. § 1630.2(j)(1)(vii)).   The 2008 amendment focuses on whether major life activities are impaired regardless of the duration of the impairment.

### 3)   Adverse Employment Action

Defendant argues that Plaintiff needs to establish that she suffered an adverse employment action during the denial of accommodation for her disability (Docket No. 42, Def. Memo. at 14; see also Docket No. 51, Pl. Memo. at 16).   An adverse employment action is one that requires a "materially adverse change" in the terms and conditions of her employment, Granica, supra, 237 F. Supp. 3d at 75 (Docket No. 54, Def. Reply Memo. at 12).   A material adverse change includes such events as termination of employment, demotion, decrease in wage or salary, "a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation," id. (emphasis added)

Considering the proffered accommodation, "employers are not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee," Noll v. IBM, 787 F.3d 89, 95 (2d Cir. 2015) (Docket No. 54, Def. Memo. at 8).

### 4)   Interactive Process

When, as here, Plaintiff requests an accommodation, the ADA "contemplates that employers will engage in an 'interactive process' with their employees and in that way work together to assess whether an employee's disability can be reasonably accommodated," Nassry v. St. Luke's Roosevelt Hosp., No. 13 CV 4719, 2017 WL 1274576, at *11 (S.D.N.Y. Mar. 31, 2016) (quoting Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 135 (2d Cir. 2008)).   To determine the appropriate reasonable

accommodation "it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability," 29 C.F.R. § 1630.2(o)(3).

To satisfy the interactive requirement, the "employer must first identify the full range of alternative positions for which the individual satisfies the employee's legitimate, nondiscriminatory prerequisites," and then determine the employee's skills and abilities to perform the essential functions of the alternatives, Dalton v. Subaru-Isuzu Automotive, Inc., 141 F.3d 667, 678 (7th Cir. 1998) (Docket No. 38, Pl. Memo. at 29).

The interactive process begins when the employee requests an accommodation, Pantazes v. Jackson, 366 F. Supp. 2d 57, 70 (D.D.C. 2005).  EEOC regulations call for the employer to initiate this process, Felix v. New York City Transit Auth., 154 F. Supp. 2d 640, 658 (S.D.N.Y. 2001); 29 C.F.R. § 1630.2(o)(3).  Once an employer knows of a disability, the employer has an obligation (deemed mandatory by some Circuits, e.g., Barnett v. USAir, Inc., 228 F.3d 1105, 1112 (9th Cir. 2000) (en banc) (citing cases)[3]) to initiate this informal process, Faison v. Vance-Cooks, 896 F. Supp. 2d 37, 62 (D.D.C. 2012).  The employer needs to engage in this interactive process in good faith, Pantazes v. Jackson, 366 F. Supp. 2d 57, 70 (D.D.C. 2005); Conneen v. MBNA America Bank, N.A., 334 F.3d 318, 333 (7th Cir. 1996); see also Picinich v. United Parcel Serv., 321 F. Supp. 2d 485, 511 (N.D.N.Y. 2004) (employer has obligation to communicate with employee during interactive process in good faith), and would fail to do so, for example,

---

[3]The plaintiff in Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 219 (2d Cir. 2001), presented the Second Circuit the opportunity to rule on whether an employer has an independent duty to engage in an interactive process.  That plaintiff argued that the Second Circuit should join the Ninth and other Circuits and hold the obligation was mandatory.  Since that plaintiff did not argue this point before Judge John Curtin of this Court, the Second Circuit declined to consider the argument, id.

by causing unreasonable delays, Faison, supra, 896 F. Supp. 2d at 62; Pantazes, supra, 366 F. Supp. 2d at 70 (citing Picinich, supra, 321 F. Supp. 2d at 514).

The Second Circuit has held that failure to engage in an interactive process does not form an ADA claim absent evidence that an accommodation was possible, McBride, supra, 583 F. 3d at 100.  In a two-step process found by the Second Circuit, Plaintiff has a burden of proving that an accommodation exists that permits her to perform the job's essential functions, Borkowski v. Valley Central School Dist., 63 F.3d 131, 138 (2d Cir. 1995), and if Plaintiff met that burden, the question is whether the proposed accommodation is reasonable, with the burden of persuasion on this point is on Defendant, id.

The mere failure to engage in an interactive process is not an independent violation of the ADA, Williams v. New York City Dep't of Health and Mental Hygiene, 299 F. Supp. 3d 418, 425 (S.D.N.Y. 2018).

### b.   Perceived as Disabled

Plaintiff alleges that Defendant regarded her as disabled (Docket No. 1, Compl. ¶¶ 56-64).  To establish this claim, Plaintiff has to show that she was "subject to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity," 42 U.S.C. § 12102(3)(A) (Docket No. 42, Def. Memo. at 16 n.5).

As found for the Rehabilitation Act but applicable to the ADA, an as perceived disability "the perception and others that one is substantially limited in a major life activity can be just as disabling as actually being disabled," McCollough v. Atlanta Bev. Co., 929 F. Supp. 1489, 1498 (N.D. Ga. 1996) (citing School Board of Nassau Cnty. v. Arline,

480 U.S. 273, 283, 107 S.Ct. 1128, 94 L.Ed.2d 307 (1987) (Rehabilitation Act)).  "Where a 'defendant's recognition of plaintiff's limitations was not erroneous perception, but instead was a recognition of a fact,' McCollough, [supra], 929 F. Supp. 1489, 1498 (N.D. Ga. 1996), 'a finding that plaintiff was regarded as disabled and, therefore [is] entitled to the protections of the ADA[,] is inappropriate,' Bute v. Schuller Int'l Inc., 998 F. Supp. 1473, 1477 (N.D. Ga. 1998)," Hilburn v. Murata Elec. N. Am., Inc., 181 F.3d 1220, 1230 (11th Cir. 1999).

### c.  Retaliation Claims under the ADA

A retaliation claim under the ADA is analyzed under the same McDonnell Douglas burden shifting framework, Granica, supra, 237 F. Supp. 3d at 80; see Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003).

As this Court noted in another case,

> A valid claim of ADA retaliation requires a showing that: (1) the plaintiff engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against the plaintiff; and (4) a causal connection exists between the alleged adverse action and the protected activity.  Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).

Boyce v. Erie County, No. 13CV619, 2014 WL 4923588 (W.D.N.Y. Sept. 30, 2014) (Skretny, C.J.).

### B.  Motions for Summary Judgment

Plaintiff's claims arise from Plaintiff's temporary assignment from the meter reading position to an office job from August 2015 to January 2016.  Both parties filed opposing motions for summary judgment, making identical arguments in asserting or opposing these motions.  Defendant contends that Plaintiff was not disabled or deemed so by Defendant.  Defendant claims it afforded accommodations to Plaintiff's condition (first by

having her ride with a non-smoker—as she requested—then by locating her in an office rather than on the road, finally returning her to her Service Representative-A position when she was medically cleared to do so).

Plaintiff responds (and states in her own motion) that she was disabled, that Defendant treated her as such, but failed to engage in an interactive process to resolve her disability needs or furnish her with reasonable accommodation for her condition.

### C. Prima Facie Disability Case under ADA

Defendant argues that Plaintiff did not establish a prima facie case (Docket No. 42, Def. Memo. at 10-16; see Docket No. 57, Def. Reply Memo. at 1-3; Docket No. 54, Def. Response Memo. at 2-9), contending that Plaintiff was not disabled under the terms of the ADA (Docket No. 42, Def. Memo. at 11-14).  Plaintiff has not established that she had an impairment that substantially limited a major life activity despite her disability affecting her sight (id. at 11-13).  She has not been impaired in performing her work, with Plaintiff testifying that she was able to read, care for herself, and perform other routine daily functions (id. at 12-13, 12; Docket No. 33, Def. Atty. Affirm., Ex. A, Pl. Tr. at 9).  Defendant contends that Plaintiff's ability to work was not substantially limited, see Anderson v. National Grid, PLC, 93 F. Supp. 3d 120, 137 (E.D.N.Y. 2015), despite her work restrictions from May to November 2015 (Docket No. 42, Def. Memo. at 12-13), although Plaintiff did not return as a SR-A until January 2016.

Defendant also asserts that Plaintiff never suffered a materially adverse employment action during this period (id. at 14-16; Docket No. 54, Def. Response Memo. at 12).

Plaintiff responds that she established a prima facie case under the ADA (Docket No. 51, Pl. Memo. at 10-16; see Docket No. 38, Pl. Memo. at 16-35). She claims disability in not being able to drive while exposed to tobacco smoke, claiming working as the major life activity affected by her driving limitations (Docket No. 58, Pl. Reply Memo. at 3-4). Even if episodic, Plaintiff claims that this disability substantially limits a major life activity (id. at 4).

Next, she claims she suffered adverse employment actions through the loss of overtime income and diminished material responsibilities from her reassignment to desk duty (Docket No. 51, Pl. Memo. at 16-20).

### 1.  Elements

Given the focus on whether Plaintiff established a prima facie case, this Court has not considered the later burden shifting stages for an ADA claim. Reviewing the elements for Plaintiff establishing a prima facie ADA disability claim, no one questions Defendant being covered under the ADA or that a reasonable accommodation would allow Plaintiff to perform the essential functions of the job at issue. As a Service Representative, Plaintiff reads meters, collects past due accounts, and turn on and off service (Docket No. 32, Def. Statement ¶ 3). The question is how an SR-A gets to the consumer's meters. Defendant argues that the ability to drive is needed to perform this job (id. ¶ 4) while Plaintiff disputes this, contending that employees in a crew had discretion to decide who drives (Docket No. 52, Pl. Responding Statement ¶¶ 3, 4). Plaintiff concedes that her job had her either drive or ride to meters (Docket No. 35, Pl. Statement ¶ 3). The essential function for the SR-A position is meter reading and servicing; transport to the meters is the manner in which the employee gets to the site to perform the job.

Another clear element is Defendant declining to adopt Plaintiff's proposed accommodation. After August 24, 2015, Defendant sought other methods aside from crew assignments.

The remaining issue here is whether Plaintiff was a person with a disability. Since 2003, Plaintiff was diagnosed with corneal dystrophy, keratoconus, and keratitis. Plaintiff's condition generally was under control save when she was exposed to tobacco smoke. In May 2015, Plaintiff submitted Dr. Stathopoulos' prescription for a two-person crew without a smoker (Docket No. 35, Pl. Statement ¶ 13; Docket No. 32, Def. Statement ¶ 18). Defendant's staff construed this prescription as a request to not drive for her job. At first, Defendant accommodated her by assigning her with non-smokers or having her drive alone. After August 2015, Defendant assigned her to a temporary office job while negotiating a permanent accommodation and confirming her continued disability (from Defendant's perspective, her inability to drive Defendant's vehicles). Plaintiff was reevaluated by Defendant's medical consultant and by December 2015 determined that she could return to her former work, returning to that position in January 2016.

Plaintiff's three ailments constitute a physical impairment under the ADA. The question is the severity of her impairment and whether her impairment substantially limits a major life activity. Plaintiff's impairment generally is not a substantial limit on Plaintiff's other aspects of her life (such as caring for herself, performing manual tasks, hearing, eating, sleeping, walking, standing, sitting, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, and communicating, 42 U.S.C. § 12102(2)), including performing work that does not require being in Defendant's company vehicles. Another listed major life activity is seeing, id. Plaintiff only asserts her sight is impaired when she

23

is exposed to tobacco smoke.  Since Plaintiff has not alleged the frequency in which she was so exposed to tobacco at work (with evidence in the record that Defendant had a policy against smoking in its vehicles, Docket No. 38, Pl. Atty. Decl. Ex. H; Docket No. 53, Def. Statement ¶ 22), Plaintiff fails to prove a substantial limitation to her sight.

The only other listed major life activity is working, id.  The parties dispute whether driving itself is a major life activity, especially after the 2008 amendments to the ADA and its broadened definition of disability, see Anderson v. National Grid, supra, 93 F. Supp. 3d at 134 (compare Docket No. 42, Def. Memo. at 12 with Docket No. 51, Pl. Memo. at 15 (driving is not a major life activity, but it could create a disability if it caused an impairment of work or other major life activity, citing id. at 135, 134).

For resolution of these motions, this Court need not decide whether driving associated with work is in of itself a major life activity, see id. at 134-35.  The Eastern District of New York in Anderson v. National Grid also avoided resolving this issue after the 2008 amendments to the ADA because Anderson alleged major life activities of sitting and working, id.  The court quoted Anderson's argument that "the inability to drive nevertheless could create a disability if it impaired the major life activity of working," id. at 135.

Plaintiff's ability to work here is a major life activity, see Cullen v. Verizon Commns., No. 14CV464, 2014 WL 6627494, at *3 (W.D.N.Y. Nov. 21, 2014) (Skretny, C.J.) (dismissal of original complaint), further order, 2015 WL 4508711 (W.D.N.Y. July 24, 2015) (dismissal of amended complaint); 42 U.S.C. § 12102(2).  The SR-A position Plaintiff sought reasonable accommodation for involved driving (or at least riding in a company vehicle to meters).

Both sides cite to the definitional standard for a substantial limitation to a major life activity (compare Docket No. 42, Def. Memo. at 12-13 with Docket No. 51, Pl. Memo. at 12).  Under EEOC regulations, 29 C.F.R. § 1630.2(j)(1), and as developed in case law, e.g., Anderson v. National Grid, supra, 93 F. Supp. 3d at 137, substantial limitation means a significant restriction "as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity," 29 C.F.R. § 1630.2(j)(1).  As held by the Second Circuit, "the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working," Cameron v. Community Aid for Retarded Children, Inc., 335 F.3d 60, 65 (2d Cir. 2003) (internal citations and quotation marks omitted); Anderson, supra, 93 F. Supp. 3d at 137-38.

Here, Plaintiff claims substantial limitation in the context of exposure to tobacco smoke in Defendant's cars while doing her duty as an SR-A.  Plaintiff has an eye irritation that medically otherwise is stable (Docket No. 32, Def. Statement ¶ 16), although Plaintiff contests Defendant's definition of her "condition" (Docket No. 52, Pl. Response ¶ 16).  As Defendant points out, Plaintiff can work and function despite her condition, including the ability to drive (Docket No. 32, Def. Statement ¶ 17).  While Plaintiff disputes this, contending that she is unable to work in the presence of cigarette smoke (Docket No. 52, Pl. Responding Statement ¶ 17), her condition only was episodic when exposed to tobacco smoke (see Docket No. 58, Pl. Reply Memo. at 4).  She does not claim that she cannot work generally.  Defendant focused on Plaintiff's ability to drive while Plaintiff stresses her exposure to smoke in Defendant's vehicle.  Both focuses are significantly

limited and does not hinder work, either in Plaintiff's desired, past position or working generally.

Plaintiff merely concludes that this circumstance is a substantial limitation and does not cite cases of other employees who have Fuchs' corneal dystrophy, keratoconus, or keratitis that were affected by exposure to tobacco smoke while on the job.  Plaintiff has not shown that she is substantially limited by her condition.

The parties do cite the limited number of cases involving keratoconus, one of Plaintiff's ailments.  In Pezzullo v. Webster Bank, No. 06-cv-1220, 2008 WL 4307111 (D. Conn. Sept. 19, 2008), Alice Pezzullo argued that the defendant bank violated the ADA in terminating her due to her keratoconus, id. at *1.  The issue there was "whether keratoconus 'substantially limits' Pezzullo," id. at *2.  Ms. Pezzullo worked as a bookkeeper and drove to work every day but avoided night driving.  She needed to sit close to a computer and needed to wear goggles and a bonnet when gardening due to being bothered by wind, dust, grass, and bright sunlight.  Id. at *1.  When infected, which occurred about once a month for a week, Ms. Pezzullo would only wear one contact lens in her eyes and could still drive with only a single contact lens, id.  But when deposed, Ms. Pezzullo answered that she did not believe her keratoconus had anything to do with defendant bank's employment decisions, id.  She alleged that her keratoconus "did not in any way impede her ability to perform her [job] duties . . .," id.  She also did not assert her condition worsened from exposure to tobacco or other fumes.

The District of Connecticut then discussed other cases cited by those parties on whether keratoconus satisfies the definition for disability under the ADA, id. at *2.  Among the cited cases are Phillips v. DaimlerChrysler Corp., No. Civ.A.01-247-JJF, 2003 WL

22989481 (D. Del. Mar. 27, 2003); Jamison v. Dow Chem. Co., 354 F. Supp. 2d 715 (E.D. Mich. 2004), cited by Defendant in the case at bar (Docket No. 42, Def. Memo. at 13); and McCutchen v. Sunoco, Inc., No. CIV.A.01-2788, 2002 WL 1896586 (E.D. Pa. Aug. 16, 2002), cited by Plaintiff here (Docket No. 51, Pl. Memo. at 14-15).

In Phillips, the court held that Paul Phillips' keratoconus was not a substantial limitation, noting that Phillips drove, attended college, and worked at a  variety of jobs, 2003 WL 22939481, at *4.  In Jamison, Justin Jamison contracted keratoconus which made him sensitive to dust and chemical vapors.  Defendant Dow Chemical unsuccessfully reassigned Jamison to five different positions to accommodate his condition but then terminated him because they could not offer a position that he could perform.  354 F. Supp. 2d at 728-29.  The Jamison court held that his keratoconus was not a substantial limitation because he was able to drive, read, balance his checkbook, watch television, and other activities, id.  In another case cited by the Pezzullo court finding that plaintiff's keratoconus was not a substantial limitation, the court in Matthews v. Village Center Community Development District, No. 5:05-cv-344-Oc-10GRJ, 2006 WL 3422416 (M.D. Fla. Aug. 16, 2002), found that Mathews "could perform all of her job duties and that the negative effects of her keratoconus were controlled by eyeglasses, contact lenses, and surgery that had been performed on her left eye," Pezzullo, supra, 2008 WL 4307111, at *3 (citing Matthews, supra, 2006 WL 3422416, at *10-11).

Comparing these cases, the Pezzullo court found that her facts are similar to the cases concluding that the keratoconus was not a substantial limitation, 2008 WL 4307111, at *4.  Ms. Pezzullo was able to drive despite her eye infection, she continued to work as a bookkeeper and read newspapers and magazines, id.  Plaintiff alleged that

27

her keratoconus did not impede her ability to perform her job, repeating this in her deposition testimony, id.  The court concluded that Ms. Pezzullo's keratoconus was not as restricted as the plaintiffs in Phillips, Jamison, and Matthews and far less severe as the condition of the plaintiff in McCutchen, thus her keratoconus did not qualify as an ADA disability, id.  The common finding in the cited cases is also the ability of the claimants there to drive despite the keratoconus, id. at *3-4 (citing cases).

Notwithstanding Plaintiff's reliance, McCutchen is distinguishable.   John McCutchen lost sight in his left eye and had severe keratoconus in the right, leaving his vision very blurry, 2002 WL 1896586, at *8.   Defendants in that case argued that McCutchen testified that his condition did not interfere with his daily activities, therefore he was not disabled, id.   The court, however, recognized when "a person who has suffered from a visual impairment for his entire life would adjust his daily activities so as to accommodate the impairment," id. at *9 (discussing adjustments in that plaintiff's daily life).   The court characterized defense precedents as holding "that plaintiffs with vision problems do not suffer from substantially limiting impairments if they are still able to perform normal daily activities without difficulty," id. (citing defense cited cases).   The court then held that McCutchen demonstrated his ability to prove that his eye condition "significantly restricts the acuity and manner in which he can see compared to the condition and manner in which the average person in the general population can see," id.

In the case at bar, Plaintiff's case keratoconus is not as severe as McCutchen's who had continuously blurred vision in his remaining eye.  Plaintiff's condition becomes an issue only when exposed to confined tobacco smoke.  Again, there is no record as to the frequency of Plaintiff being so exposed while at work.  She denied problems with

exposure to smoke in other locations.  She was diagnosed with keratoconus from 2003 and only made this ADA accommodation request in 2015.  Mr. McCutchen has more limitations on his daily life, with accommodations and adjustments made for his vision, that is presented in this record for Plaintiff.  Plaintiff's limitations from keratoconus are akin to those found in Pezzullo and cases cited therein finding that impairment was not a significant limitation for those plaintiffs, hence not a disability under the ADA.

Keratoconus is defined as the cornea having a protrusion without inflammation, Taber's Cyclopedic Medical Dictionary, supra, at 969.  Keratitis, however, is the inflammation of the cornea, id. at 968, and Plaintiff claims this as one of her diagnoses. Defendant discusses her inflammation without using that diagnosis.  This Court has not found any cases discussing keratitis or eye inflammation as the disability in an ADA case.

To be deemed a disability, there has to be a substantial limitation in a major life activity, here working.  That work is not just the job Plaintiff seeks accommodation, Cameron, supra, 335 F.3d at 65, but working in general.  A substantial limitation is as compared with an average person in the general population working, see 29 C.F.R. § 1630.2(j)(1)(ii).  Even under the EEOC's post-ADAAA regulations that define "substantially limits" broadly and for the statutory maximum coverage, 29 C.F.R. § 1630.2(j)(1)(i), the limitation is still to a major life activity, not the particulars of how that life activity might be performed (again, working as opposed to a particular occupation).

The claimed impairment here, however, is not substantial limitation to the major life activity of working.  Plaintiff's objection is her transport to the field for her work and driving with persons who smoke.  She is not hindered from performing the work of reading meters or settling accounts and electrical service outside of the company vehicle.  Nor is

she significantly restricted as compared with an average employee with comparable training, skills, and abilities.  Therefore, Plaintiff has not established a prima facie case for disability; Defendant's motion for summary judgment (Docket No. 31) is granted and Plaintiff's motion for summary judgment (Docket No. 34) is denied.

### 2.   Duration of Plaintiff's Disability

Plaintiff sought accommodations for essentially six months.  She noted her disability and requested accommodation in May 2015 but by December 2015 a further evaluation found that Plaintiff was able to return to her former work despite her chronic condition.  Plaintiff returned to that position in January 2016 without any incident noted in this record and with no notation that she was being afforded an accommodation for her condition (cf. Docket No. 32, Defendant's Statement ¶¶ 49-51; Docket No. 52, Pl. Responding Statement ¶¶ 49-51 (not disputing Defendant's Statement ¶¶ 49-51)).  That period, without any major life activity affected, is too brief to constitute a disabling impairment, see Van Ever-Ford, supra, 2020 WL 5951334, at *10-11.  Plaintiff suffered from this impairment, but it did not permanently impair a major life activity, id. at *10; see id. at *11 ("an absence of several days" due to an ailment "is not sufficient to demonstrate a permanent disability").  "A 'temporary impairment' lasting only a few months," however, "is by itself, too short in duration . . . to be substantially limiting,'" id. at *10, quoting De La Rosa, supra, 427 F. App'x at 29 (quoting in turn Adams v. Citizens Advice Bureau, 187 F.3d 315, 316-17 (2d Cir. 1999)).  That Plaintiff here may have been temporarily disabled during those six months does not establish a prima facie case for discrimination based upon her disability.  Even as episodic impairment during this period, cf. Robles, supra, 2020 WL 3403191, at *8, Plaintiff fails to establish a substantial limitation on a

30

major life activity.  Although not argued by Defendant, this Court is not confined to the arguments it raises in support of its motion, 10A Federal Practice and Procedure, supra, § 2725.3, at 447.  Thus, Defendant's motion for summary judgment is granted and Plaintiff's motion is denied on this ground.

### 3.  Reasonable Accommodations

Alternatively, another issue is whether Plaintiff could perform the essential functions of her job with reasonable accommodation.  Plaintiff's SR-A position reads meters and adjusts accounts and electrical service in the field.  Defendant defined the essential function of her job as SR-A as driving.  After Plaintiff requested accommodation here, Defendant assigned Plaintiff with non-smokers and then reassigned her to office duty.  Plaintiff states that she had the discretion as an SR-A with her partner to decide who actually drove.

Plaintiff's proffered accommodation, assignment of non-smokers to her vehicle, while apparently reasonable, is not the sole reasonable accommodation.  Defendant did not need to provide Plaintiff's sought accommodation, Null v. International Business Machines Corp., 787 F.3d 89, 95 (2d Cir. 2015) (citing 29 C.F.R. § 1630 app, employer has ultimate discretion in choosing between effective accommodations); McElwee, supra, 700 F.3d at 641.  Defendant, however, initially did provide this rescheduling accommodation.  Defendant later claims it had scheduling issues locating non-smokers to drive with Plaintiff (Docket No. 53, Def. Response ¶ 40; Docket No. 38, Pl. Atty. Decl. Ex. U (email chain)), but Defendant has not provided proof of corporate hardship in this scheduling and reassignment.  This led Defendant to the alternative accommodation of assigning Plaintiff to office work from August 24, 2015, to January 2016.  This

reassignment is also reasonable because it avoids Plaintiff's exposure to tobacco smoke while she still worked in the CMS department.   Plaintiff's objections to this interim arrangement is addressed below in discussing Plaintiff's accusation that Defendant failed to accommodate her disability.

> D.  As Perceived and Failure to Accommodate

With the threshold nature of whether Plaintiff was disabled, her other claims for as perceived disability, failure to accommodate, and failure to engage in an interactive process are implicated.

> 1.  Was Plaintiff Deemed Disabled by Defendant?

Defendant contends that Plaintiff failed to establish that Defendant regarded her as disabled (Docket No. 42, Def. Memo. at 16; see Docket No. 57, Pl. Reply Memo. at 7-9).   Defendant argues that Plaintiff also cannot meet "regarded as" disabled standard, that is, that she was "subject to an action prohibited under the [Act] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity," 42 U.S.C. § 12102(3)(A) (emphasis added) (id. at 16 & n.5).   Plaintiff argues that from Defendant's own actions in reassigning her, Defendant regarded Plaintiff as disabled (Docket No. 51, Pl. Memo. at 20-22; see Docket No. 38, Pl. Memo. at 35-37).

Upon Plaintiff submitting her doctor's prescription for accommodation against riding with a smoking coworker, Defendant did treat Plaintiff as disabled.   Defendant may have erred in considering her ability to drive rather than focusing on the exposure to smoke as the disability, but both arise from the effect of Plaintiff's exposure to confined tobacco smoke.   Defendant's "'recognition of plaintiff's limitations was not erroneous

32

perception, but instead was a recognition of a fact,'" Hilburn, supra, 181 F.3d at 1230 (quoting McCollough, supra, 929 F. Supp. at 1498).

Plaintiff here fails to show that she was subject to a prohibited action under the ADA due to her perceived disability.  Her claim essentially is that she was perceived as being unable to perform as an SR-A so long as she had to be paired with a smoker.  Being regarded as unable to perform a particular job, however, does not state a claim, see Murphy v. United Parcel Service, Inc., 527 U.S. 516, 524, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999) (petitioner fails to produce evidence creating a genuine issue of fact that he was regarded as unable to perform the job of mechanic that does not require driving a commercial vehicle).

Plaintiff also alleges the prohibited action was the denial of Plaintiff's proffered accommodation because Defendant regarded him as disabled.  As stated above, absent a prima facie case of a substantial limitation to a major life function, Plaintiff fails to state a need for any accommodation.  Additionally, Plaintiff did receive the accommodations she sought for the first months following her request.

Therefore, Plaintiff's motion for summary judgment (Docket No. 34) on this ground is denied and Defendant's motion for summary judgment (Docket No. 31) is granted.

2.  Failure to Accommodate

Defendant then argues that Plaintiff cannot establish a failure to accommodate her disability as a matter of law because Defendant did accommodated Plaintiff (Docket No. 42, Def. Memo. at 17-20).  Plaintiff responds that Defendant failed to accommodate Plaintiff (Docket No. 51, Pl. Memo. at 22-30), arguing that Defendant's offer during the interactive process in November 2015 was illusory (id. at 25-27).

33

There are two parts to this allegation; first, whether the parties engaged in good faith in an informal interactive process to resolve Plaintiff's needs and, second, whether Defendant afforded Plaintiff reasonable accommodation for her disability.

a.  Interactive Process

Plaintiff argues that Defendant failed to engage in interactive process (Docket No. 38, Pl. Memo. at 29-35).   At bottom, she complains that Defendant imposed accommodations upon her (removing her from her job in the field) and failed to explore her preferred option of assigning a non-smoker with her and allowing her to return as a SR-A (Docket No. 58, Pl. Reply Memo. at 9-10).

The informal interactive process should begin once Plaintiff submitted her first prescription in May 2015, see Pantazes, supra, 366 F. Supp. 2d at 70.  From May 12 to August 24, 2015, Defendant did assign non-smokers to Plaintiff's vehicle or had her drive alone.  Defendant thus provided the accommodation sought but without involving Plaintiff in that process.  The EEOC regulation does state that the informal interactive process "may" be necessary, 29 C.F.R. § 1630.2(o)(3).   Where Plaintiff receives the accommodation requested, an interactive process to adapt that request is unnecessary.

From August 24, 2015, Defendant reassigned her to office work to avoid Plaintiff's exposure to smoke.  Plaintiff was not involved in the process of selecting this method, or in Defendant's staff prior discussions of other alternatives.  Defendant argued that it engaged in the interactive process during the first few months of Plaintiff's disability by conferring about possible options.  "Interactive" means that Plaintiff must be involved to express her position on the options considered as possible reasonable accommodations. Plaintiff was brought into the interactive process in November 2015, almost six months

after she requested accommodation and about three months after Defendant reassigned her to office work.

Plaintiff should not object, however.  First, Defendant provisionally granted her the accommodation prescribed by Dr. Stathopoulos that she either drive with a non-smoker or drive alone.  Defendant made the preliminary decision to take Plaintiff off the road in an abundance of caution to avoid further exposure (and the risk of her driving with impaired vision) not only from the atmosphere of the company vehicles but also the potential environment of the customers' facilities, however correct that assessment might have been.  This extended to Defendant's subsequent decision to move Plaintiff off the road and into the office.

Months later in the interactive process, Defendant then proposed alternatives to Plaintiff but not including the one she wanted.  None of these alternatives ultimately were implemented before Plaintiff had a further evaluation finding no disability to prevent her from resuming her former position.   Defendant proposed accommodations until they became unnecessary.

The ADA "imposes liability for, inter alia, discriminatory refusal to undertake a feasible accommodation, not merely refusal to explore possible accommodations where, in the end, no accommodation was possible," McBride, supra, 583 F.3d at 100.  Liability also occurs if both the employer fails to engage in interactive process and the absence of evidence that an accommodation was possible, id.  Plaintiff here merely alleges that Defendant did not conduct the interactive process.

Although the delay in commencing the interactive process with Plaintiff here is troubling, Faison, supra, 896 F. Supp. 2d at 62; Pantazes, supra, 366 F. Supp. 2d at 70,

Defendant did eventually engage in that process.   Accommodations were possible including the reassignment Defendant imposed and Plaintiff's proffered solution.  Plaintiff then merely argues that her preferred accommodation (return to her job but without a smoking coworker) presumably was not considered.  She has not alleged the absence of any accommodation.

This Court holds that there is no material issue of fact as to the interactive process. Even if this process was deficiently performed during the six months from Plaintiff's first notification of disability until her return to her prior position (especially at the last half of this period after Defendant's voluntary adoption of Plaintiff's accommodation ended), the interactive process was engaged in.   In that process, the parties considered accommodations and then accommodations were rendered moot when evaluators found Plaintiff able to resume her work.

### b.  Accommodation

Defendant engaged in accommodating Plaintiff for her inability to drive by assigning non-smokers to her vehicle (or driving alone) and later relocating her to an office.  Before a permanent accommodation was adopted, Defendant confirmed Plaintiff's ability and returned her to SR-A.  Plaintiff does not dispute the finding from December 2015 that she could return to her prior position, returning to that job in January 2016. Notably, she does not complain about her job conditions in the vehicle after her restoration.  The record does not indicate if she was assigned with non-smokers after returning as SR-A or was assigned to solo missions.

This case is about the six months Plaintiff received temporary accommodations. This Court held above that Plaintiff fails to establish a prima facie case of her disability during this relatively brief period.  Hence, Plaintiff did not require accommodation.

Plaintiff claims that the failure to accommodate her claimed disability led to the denial of opportunity for more than four months of potential overtime as an SR-A.  Loss of the opportunity to earn overtime generally has been held to be an adverse employment action, Faggiano v. Eastman Kodak Co., 378 F. Supp. 2d 292, 306 (W.D.N.Y. 2005) (Siragusa, J.); Little v. National Broadcasting Co., Inc., 210 F. Supp. 2d 330, 379 (S.D.N.Y. 2002).  The temporary loss of overtime such as here, however, is not a material change in terms and conditions to be an adverse employment action, Como v. O'Neil, No. 02 Civ. 0985, 2002 U.S. Dist. LEXIS 23314, at *6-7 (S.D.N.Y. Dec. 4, 2002).  Plaintiff lost SR-A overtime for only four months.

Plaintiff also needed to quantify her overtime prior to seeking accommodation for her disability (cf. Docket No. 54, Def. Memo. at 12-13).  Defendant points out Plaintiff had the opportunity to work overtime at the office (Docket No. 57, Def. Reply Memo. at 6); but (like Plaintiff) Defendant fails to state the amount of overtime available in the office, whether she performed overtime work, or whether that overtime at least equaled what she may have earned in the field.  Plaintiff thus fails to assert her claim of adverse employment action in depriving her of overtime.

Plaintiff next claims that the months on office duty were mere make work, hence she lost responsibilities she possessed in the SR-A position.  An actionable adverse employment action must be a materially adverse change in Plaintiff's terms and conditions which includes significantly diminished material responsibilities of her position,

<u>Granica</u>, <u>supra</u>, 237 F. Supp. 3d at 75.  Neither party, however, states the duties of the office job, while generally stating what an SR-A does (<u>see</u> Docket No. 32, Def. Statement ¶ 3; Docket No. 35, Pl. Statement ¶ 3).  While Plaintiff claims her office job was make work, she does not assert what her duties were as an SR-A for comparison.  This Court concludes there is a material issue of fact as to her office duties; certainly Plaintiff has not established the absence of an issue of fact here to grant her summary judgment.

Ultimately, this inquiry comes into play only if Plaintiff established that she was disabled.  As noted above, Plaintiff has not.  Therefore, Defendant's motion for summary judgment (Docket No. 31) dismissing this failure to accommodate claim is granted, while Plaintiff's summary judgment motion (Docket No. 34) upholding that claim is denied.

E.   Retaliation

Looking at the elements for an ADA retaliation claim, Plaintiff argues the protected activity was her request for reasonable accommodation and Defendant was aware of that activity (Docket No. 51, Pl. Memo. at 30).  Defendant characterizes Plaintiff's retaliation claim as merely a restatement of her failure to accommodate claim (Docket No. 42, Def. Memo. at 21), that Plaintiff claims Defendant retaliated because it failed to accommodate her disability (Docket No. 57, Def. Reply Memo. at 9; <u>cf.</u> Docket No. 38, Pl. Memo. at 37-38).  The failure to accommodate cannot be bootstrapped into a retaliation claim, <u>Morris v. Town of Islip</u>, No. 12-CV-2984, 2014 WL 4700227, at *18 (E.D.N.Y. Sept. 22, 2014) (Docket No. 42, Def. Memo. at 22; Docket No. 54, Def. Memo. at 14); <u>Missick v. City of N.Y.</u>, 707 F. Supp. 2d 336, 356-57 (E.D.N.Y. 2010); <u>Gomez v. Laidlaw Transit, Inc.</u>, 455 F. Supp. 2d 81, 90 (D. Conn. 2006) (failure to accommodate constituting retaliation is insufficient as a matter of law).

1.  Protected Activity and Defendant's Awareness of Activity

Protected activities usually include seeking an accommodation, Weixel v. Board of Educ. of City of N.Y., 287 F.3d 138, 149 (2d Cir. 2002); see Munck v. New Haven Sav. Bank, 251 F. Supp. 2d 1078, 1087 (D. Conn. 2003), making complaints or filing charges with the EEOC or the New York State Division of Human Rights, see Treglia, supra, 313 F.3d at 719-20.  The protected activity here was Plaintiff seeking an accommodation for her eye condition.

Defendant was aware of the activity from Dr. Stathopoulos' May 2015 prescription and Plaintiff's request for accommodation.

2.  Adverse Employment Actions

At issue is the alleged adverse action taken by Defendant.  Plaintiff argues three adverse actions occurred:  first, when Defendant gave her the permanent choice of reassignment in Fredonia or disability retirement; second, Defendant continuing her provisional assignment to the office after receiving medical reports that Plaintiff could resume her former position; and third, Defendant conducting a second independent medical examination.

a.  Offer of Forced Disability Retirement as Adverse Action

She claims one adverse employment action of Defendant telling her that she would be placed in disability retirement if she did not accept a job that did not require her driving (Docket No. 51, Pl. Memo. at 17-18, 31).  Plaintiff, however, was not reassigned to Fredonia or forced into disability retirement because Plaintiff was reevaluated and found able to return to her prior duties.  She never reported to that office; reassignment there or disability retirement were merely proposed accommodations.  Plaintiff remained in the

CMS office until reassigned to her SR-A position once she was medically cleared.  A proposed assignment that is not implemented is not an adverse employment action that is actionable under the ADA, see Sosa v. New York City Dep't of Educ., No. 18CV411(PKC) (SJB), 2020 WL 1536348, at *5 (E.D.N.Y. Mar. 31, 2020).  The threat of reassignment or forced retirement also is not an adverse employment action absent other negative results (such as decrease in her pay or placement on probation, which did not occur), see Campanella v. O'Flynn, No. 10CV6236, 2017 WL 475676, at *6 (W.D.N.Y. Feb. 6, 2017) (Geraci, C.J.), motion to set aside judgment granted, 2017 WL 1541227 (W.D.N.Y. Apr. 28, 2017) (reopening motion for plaintiff to file response); Bowen-Hooks v. City of N.Y., 11 F. Supp. 3d 179, 212 (E.D.N.Y. 2014); Uddin v. City of N.Y., 427 F. Supp. 2d 414, 429 (S.D.N.Y. 2006).  Plaintiff thus fails to allege harm from this proposal.

### b.  Assigned Office Work as Adverse Action

Second, another adverse action Plaintiff cites is her assignment to office work or keeping her there for a month after the second, involuntary independent medical examination in November 2015 (id. at 32).  That evaluation cleared her to drive but she stayed in the office.  Assigning her to office work or keeping here there is not adverse.  As mentioned in discussing reasonable accommodations, Plaintiff has not established the duties in that office work or the amount or availability of overtime (two complaints she raised against that work compared with her former position) to show the assignment was adverse.  Plaintiff also has not shown a causal connection between her protected activity and her continued office assignment.

### c.  Second Independent Medical Examination as Adverse Action

40

Third, Plaintiff complains that Defendant retaliated by having her re-evaluated after she provided medical records from her doctor (id. at 31-32; see Docket No. 38, Pl. Memo. at 38 & n.7). Defendant replies that it believed that it received inconsistent medical opinions from Dr. Stathopoulos on Plaintiff's condition (Docket No. 57, Def. Reply Memo. at 10; see Docket No. 54, Def. Memo. at 15), see Covelli v. National Fuel Gas Distribution Corp., No. 99CV500, 2001 WL 1823584, at *6 (W.D.N.Y. Dec. 6, 2001) (Elfvin, J.), aff'd, 49 F. App'x 356 (2d Cir. 2002).

Defendant (focusing on Plaintiff's ability to drive) appeared confused by Dr. Stathopoulos' evaluations although they consistently found that Plaintiff needed to avoid being in a vehicle with a smoker. Dr. Stathopoulos' November 3 note Plaintiff could drive, provided it was with a non-smoker while his November 13 note cleared Plaintiff to return to work without any restrictions. Stressing Plaintiff's ability to drive, Defendant sought the second independent medical evaluation when Dr. Stathopoulos stated Plaintiff had no driving restriction after appearing to say that she had such a restriction.

Plaintiff argues that an independent medical evaluation is allowed under the ADA only if it is shown to be job related consistent with business necessity (Docket No. 38, Pl. Memo. at 38 & n.7, citing 42 U.S.C. § 12112(d)(4)(A); 29 C.F.R. § 1630.14(c)). But when Defendant received what it perceived was an inconsistent medical report that Plaintiff submitted, Defendant had a business necessity to confirm Plaintiff's condition to determine whether an accommodation was required. The ADA precludes employer examination of an employee or inquiries whether the employee is disabled on the employer's suspicion of disability absent being job related and consistent with business necessity, 42 U.S.C. § 12112(d)(4)(A). In E.E.O.C. v. Prevo's Family Market, Inc., the

defendant grocery store discharged an alleged HIV-positive employee for refusing a medical examination.  The Sixth Circuit held that this discharge did not violate the ADA because the examination was intended to protect the health of its other employees and the general public from HIV infection.  That court found that an "employer need not take the employee's word for it that the employee has an illness that may require special accommodation," and the employer "has the ability to confirm or disprove the employee's statement" under § 12112(d)(4)(4).  E.E.O.C. v. Prevo's Family Mkt., Inc., 135 F.3d 1089, 1094 (6th Cir. 1998); see Sloan v. Repacorp, Inc., 310 F. Supp. 3d 891, 900-01 (N.D. Ohio 2018).  The Sixth Circuit recognized that "the purpose of the ADA was not to create impediments for such employer-employee co-operation, but to promote an interactive dialogue between an employer and employee to discover to what extent the employee is disabled and how the employee may be accommodated, if at all, in the workplace," Prevo's Family Mkt., supra, 135 F.3d at 1095.

The employee's seeking accommodation, as Plaintiff is here, creates the business necessity for Defendant to confirm the extent of the disability.  This enables Defendant and Plaintiff to engage in an interactive process based upon the facts of Plaintiff's condition and what conditions she can work under as a result rather than speculation by the employer.  Plaintiff here complains that the interactive process did not occur here, but this second independent examination was part of that interactive process.  It is unclear how Defendant (or any other employer with a pending request for accommodation) can make an accommodation without some confirmation of Plaintiff's claimed disability.  That confirmation does not violate the ADA examination restriction.  Plaintiff's retaliation claim also fails.

### 3.  Causal Connection

Finally, she contends that her reasonable accommodation application and Defendant's adverse action were connected (Docket No. 38, Pl. Memo. at 32).  This causal connection, however, is bootstrapping her accommodation application.

Plaintiff's claim for retaliation is **denied**.  Thus, Plaintiff's motion (Docket No. 34) for summary judgment on this claim is **denied** and Defendant's motion (Docket No. 31) for summary judgment in its favor is **granted**.

## IV.    Conclusion

In sum, Plaintiff's ADA claims lack merit.  Defendant at first provided the accommodation Plaintiff sought by assigning her with a non-smoker or assigning her to travel alone as an in-field representative.  Defendant then temporarily addressed Plaintiff's claimed inability to ride in a vehicle with tobacco smoke due to her condition (by assigning her to office work), then met with her in an interactive process to find a permanent accommodation.  No proposed accommodation arose from that discussion, but subsequent medical evaluations determined that Plaintiff could return to her former position as a Service Representative-A.  Plaintiff resumed that work with apparently no incident.  Plaintiff never complained from December 2015 until October 2017 that she was compelled to ride in company vehicles with smokers and irritated her eyes as a result.

If Plaintiff was disabled, her proposed accommodation is eminently reasonable; Defendant (as it did for the first few months) simply reassigned non-smokers to Plaintiff's crew or had Plaintiff drive alone.  Plaintiff's claimed disability, however, did not significantly limit a major life activity and lasted for only six months.  By the time a proposed accommodation was posed, she was deemed able to resume her former duties.

She suffered no major life activity disruption due to her impairment for this six-month period or (on the record before this Court) thereafter save the loss of potential, unspecified overtime benefits.  Plaintiff fails to assert a <u>prima facie</u> case for disability discrimination.  As a result, her ADA claim is dismissed, and this Court need not address her claims for being regarded as disabled (which she also fails to allege) and whether the parties engaged in an interactive process to devise reasonable accommodations.  Plaintiff's retaliation claim also is dismissed.

Defendant's Motion for Summary Judgment (Docket No. 31) is **granted**, Plaintiff's Motion (Docket No. 34) for Summary Judgment in her favor is **denied**.

## V. Orders

IT IS HEREBY ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 31) is **GRANTED**.

FURTHER, that Plaintiff's Motion for Summary Judgment (Docket No. 34) is **DENIED.**

FURTHER, the Clerk of Court is DIRECTED to close this case.

SO ORDERED.

Dated:         November 20, 2020
                   Buffalo, New York


                                              <u>s/William M. Skretny</u>
                                              WILLIAM M. SKRETNY
                                              United States District Judge